USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/2/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OSTROLENK FABER LLP,

              Plaintiff,

     v.

PAUL J. LAGASSEY,

              Defendant.

No. 18-CV-1533 (RA)

MEMORANDUM OPINION
& ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Ostrolenk Faber LLP brings this action against Defendant Paul J. Lagassey, who is appearing *pro se*. Plaintiff asserts several claims, including breach of contract, fraud, and unjust enrichment. Now before the Court is Defendant's motion to dismiss. For the following reasons, the Court construes Defendant's motion as one to compel arbitration and grants that request.

## FACTUAL BACKGROUND[1]

Plaintiff is a New York limited liability company "engaged in the practice of law specializing in intellectual property, including the protection of patents, trademarks, and copyrights." Compl. ¶ 5. Defendant, whose primary residence is in Florida, is "an inventor and entrepreneur." *Id.* ¶ 6. To manage his inventions and related patents and trademarks, Defendant

---

[1] These facts are drawn from the complaint, Defendant's motion, and the exhibits that each party submitted with the briefs. Because the Court construes Defendant's motion as one to compel arbitration, the Court may "consider materials outside [Plaintiff's] complaint[.]" *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016) (citing to *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . the court applies a standard similar to that applicable for a motion for summary judgment, and courts therefore consider materials outside the Complaint." *Bensadoun*, 316 F.3d at 175.

Additionally, in construing Defendant's submissions, the Court is mindful that Defendant proceeds *pro se* and thus reads his submissions "to raise the strongest arguments that [they] suggest[]." *Sheridan v. Mariuz*, No. 07-CV-3313 (SCR), 2009 WL 920431, at *3 (S.D.N.Y. Apr. 6, 2009); *see also Norton v. Sam's Club*, 145 F.3d 114, 118 n.1 (2d Cir. 1998) (explaining that courts have a "duty to construe liberally papers filed by *pro se* litigants").

established several corporate entities in Florida and Alaska. These corporate entities, Plaintiff alleges, were formed "to avoid personal liability" and are "mere alter-egos of [Defendant]." *Id.* ¶¶ 12-13.

In 2010, Defendant "opened various accounts with [Plaintiff], for his supposed corporate entities." *Id.* ¶ 15. According to Plaintiff, entities that it had relationships with included Great Northern Research LLC, Conceptual Speech LLC, Eastern Investments LLC, Shrunken Heads Enterprises LLC, KoolLight LLC, Coolsoft LLC, Speechvibe LLC, and Hurricane LLC. Through 2017, Plaintiff – primarily through a former partner, Steven M. Hoffberg, *see* Def.'s Mot. ¶ 3 – provided these corporate entities with legal services, including "appl[ying] for and obtain[ing] patents rights . . . for several inventions" and "register[ing] at least one trademark." Compl. ¶ 7. Each month, Plaintiff sent an invoice to "[Defendant] and his various corporate alter-egos" for this legal work. *Id.* ¶ 21.

"[S]eparate written retainer agreements" governed the relationship between Plaintiff and each of Defendant's corporate entities. Def.'s Mot. ¶ 7; *see also* Def.'s Mot., Ex. A, Hoffberg Decl. ¶ 9. Although Defendant signed each agreement on behalf of the corporate entity, he did so in the capacity as that respective entity's manager.[2] Def.'s Mot. ¶ 2-3; *see also* Def.'s Mot., Ex. B. Defendant submitted one of these agreements with his motion. *See* Def.'s Mot., Ex. B. Defendant states – and Plaintiff has not disputed – that this retainer agreement is "representative

---

[2] At one point in his motion, Defendant suggests that he was never or no longer is the manager of, and thus lacks control over, at least two of the corporate entities that Plaintiff names in its complaint. *See* Def.'s Mot. ¶ 51-52. Yet, he does not allege that there was no retainer agreement, signed by him, between Plaintiff and these corporate entities. Moreover, in its opposition, Plaintiff disputes Defendant's assertion that he lacked a relationship – whether managerial or not – with these two entities. *See* Pl.'s Opp. at 7. Therefore, for purposes of this motion, the Court assumes that Defendant signed each relevant retainer agreement with the arbitration provision.

2

of the retainers Plaintiff has with the other Defendant managed entities."[3] Def.'s Mot. ¶ 5. The submitted agreement, as well as the other agreements, includes the following arbitration clause:

> Subject to precedence of any administrative rules or other legal obligations, any dispute concerning fees and disbursements due and/or services rendered shall be submitted to, and settled by arbitration by at least one (1) arbitrator. The arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("AAA") . . . If an arbitration is commenced by the Firm, then the Firm shall pay the cost of arbitration through judgment, subject to the following. The arbitrator shall, in the Award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail, unless the arbitrator determines that a different allocation is equitable.

Def.'s Mot., Ex. B.

Defendant explains that he negotiated for this arbitration clause because it was "intended to provide the Defendant managed entities (and also Defendant himself) with established rules for settling disputes that insulated the entities (and Defendant) from the cost of civil litigation in Court[.]" Def.'s Mot. ¶ 20; *see also* Def.'s Reply ¶¶ 18-19 ("The intent of the negotiated language of arbitration provision that required Plaintiff to pay for the cost of arbitration if the action is initiated by the law firm, was to level the playing field by protecting the small entities with minimal financial resources from the cost of an arbitration[.]"). Mr. Hoffberg confirms that Plaintiff negotiated for this provision and that Plaintiff's managing partner approved it. *See* Hoffberg Decl. ¶ 12.

On February 20, 2018, Plaintiff brought this action against Defendant, alleging material breach of the contract, account stated, quantum meruit, unjust enrichment, and fraud. The causes

---

[3] Although Defendant only submitted the agreement between Plaintiff and Eastern Investments LLC, Plaintiff has not disputed that this agreement is "representative" of the other ones between Plaintiff and Defendant's corporate entities. Def.'s Mot. ¶ 5. Nor has Plaintiff disputed that each of these agreements included the same arbitration clause. *See* Pl.'s Opp. at 6 (arguing that Defendant attempts "to rely on the arbitration provisions in those agreements as a shield from [f]ederal [l]itigation"); *id.* at 8 (explaining that "Defendant quotes the arbitration provision from the retainer agreements"). The Court, therefore, accepts Defendant's assertion that the agreement he submitted with his motion is "representative" of the other agreements between Plaintiff and the corporate entities. Def.'s Mot. ¶ 5; *see ADR/JB, Corp. v. MCY III, Inc.*, 299 F. Supp. 2d 110, 114 (E.D.N.Y. 2004) (reaching the merits of an argument to compel arbitration "[b]ecause the plaintiff concedes that the . . . Agreement contained a valid arbitration clause").

3

of action all stem from Defendant's alleged failure to pay Plaintiff for legal services and disbursements made pursuant to its accounts with Defendant's entities. Plaintiff asserts that Defendant owes it, "at minimum, $141,893, plus interest." Compl. ¶ 32. It further alleges that several of these corporate entities, including Eastern Investments LLC, Conceptual Speech LLC, and Shrunken Head Enterprises LLC, were involuntarily dissolved either before or during its legal representation. Defendant does not dispute that some of the corporate entities have been dissolved but insists it "is not deliberate . . . but the result of bad economic circumstances for the entity." Def.'s Mot. ¶ 73.

After Plaintiff filed its complaint, Defendant did not appear. Therefore, in September 2018, Plaintiff moved for a default judgment. The Court scheduled a hearing for January 8, 2019, where Defendant was ordered to show cause as to why a default judgment should not be entered against him. Several days prior to that hearing, Defendant wrote to the Court, indicating his intent to appear and be heard in this action. He requested that the Clerk of Court's entry of default be set aside for good cause pursuant to Federal Rule of Civil Procedure 55(c). In June, the Court granted this request.

On August 9, Defendant filed the present motion to dismiss this action on several grounds, including the existence of an arbitration clause in the written retainer agreements, lack of subject matter jurisdiction, improper venue, and failure to state a claim. On August 21, Plaintiff filed its opposition, and Defendant replied on October 10.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds

as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enacted to "revers[e] centuries of judicial hostility to arbitration agreements," *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 119 (2d Cir. 1991) (citation omitted), the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "In deciding motions to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (citation omitted). A court, therefore, must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings" and "draw all reasonable inferences in favor of the non-moving party." *Id.* (citation omitted).

## DISCUSSION

Defendant seeks to dismiss this action on several grounds, including lack of subject matter jurisdiction, improper venue, laches, and failure to state a claim. Although the Court need not address most of these arguments, it notes, as an initial matter, that it does have subject matter jurisdiction over this action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Here, Plaintiff alleges approximately $141,893 in damages, that its primary place of business is in New York, and that

5

Defendant is a citizen of Florida. Compl. ¶¶ 1-2, 25. While Defendant disputes that the amount in controversy is met because of alleged accounting errors that would lower the damages, a "rebuttable presumption [exists] that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999). Defendant's allegations are insufficient "[t]o demonstrate a filing in bad faith" because "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* (internal citations omitted). Having determined that it does have subject matter jurisdiction, the Court construes Defendant's motion in part as a motion to compel arbitration and grants it.

## I. Whether to Construe Defendant's Motion as a Motion to Compel Arbitration

"The Second Circuit has recognized that, depending on the facts and arguments presented, a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration[.]" *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 405 n.1 (S.D.N.Y. 2016) (citing *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139-140 (2d Cir. 2008)). The motion must either "explicitly or implicitly ask[] the court to order arbitration." *Nicosia*, 834 F.3d at 230. Where such a request is made and a movant thus manifests "an intent . . . to compel arbitration," district courts may "treat[] motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration." *Id.* at 230 & n.3.

Here, Defendant presents sufficient facts and arguments for the Court to construe it as a motion to compel arbitration. Although his *pro se* motion is labeled as a motion to dismiss, the first argument raised is in regard to the retainer agreements' arbitration provisions. *See* Def.'s Mot. ¶ 14-24. Defendant devotes several pages to explaining that Plaintiff is attempting to circumvent its obligation to arbitrate: "In light of the arbitration provisions of the written retainers,

this action against Defendant is not proper [and] Plaintiff's exclusive remedy is to arbitrate with the Defendant managed entities in accordance with the terms of the written retainer agreements it has with each of those entities." *Id.* ¶ 23. He further writes that "Plaintiff is using this action as a 'back door' in attempt to circumvent material terms of its written retainer agreements with the entities, its obligation to arbitrate with the entities, and its obligation to pay for the entities fees and costs of arbitration actions in accordance with the terms of those written retainer agreements." *Id.* ¶ 21. Finally, he cites case law to the effect that "[c]ourts typically enforce those provisions and require the parties to arbitrate." *Id.* ¶ 22 (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984)). In his motion's final section detailing what relief is sought, "Defendant asks the Court to dismiss this action because Plaintiff has separate written retainer agreements with the Defendant managed entities which have provisions that require Plaintiff to arbitrate and this Court is not the proper venue for Plaintiff to make its claims." *Id.* ¶ 107. Despite the fact that Defendant does not explicitly ask for an order compelling arbitration in his initial motion, even Plaintiff construes Defendant's motion as such. *See, e.g.*, Pl.'s Opp. at 2 ("Lagassey's motion masquerades as a Motion to Compel Arbitration, demanding that Ostrolenk arbitrate against seven entities set up by Lagassey, but which are now all 'Invalid.'").

Although Defendant's motion does not state as clearly as it could have that it seeks to compel arbitration, his reply brief removes any doubt in that respect. First, Defendant's reply brief refers to his motion as a "Motion to Dismiss or to Compel Arbitration." Def.'s Reply ¶ 1. Second, Defendant's reply brief explicitly asks the Court to order arbitration. *See, e.g., id.* ¶ 16 ("Defendant is right to ask this Court to compel Plaintiff to seek arbitration."). Together Defendant's briefs, therefore, manifest "an indication of an intent on the part of the movant to compel arbitration[.]" *Nicosia*, 834 F.3d at 230 n.3. Construing the briefs in this way is particularly proper here, where

7

Defendant is appearing *pro se*, given the Court's "duty to construe liberally [his] papers." *Norton*, 145 F.3d at 118 n.1.

## II. Whether to Grant Defendant's Motion to Compel Arbitration

"Under the FAA, the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL v. Axtel, S.A. de. C.V.*, 390 F.3d 194, 198 (2d Cir. 2004). "The party moving to compel arbitration 'must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue.'" *Begonja*, 159 F. Supp. 3d at 409 (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). This does not require the movant to show the "agreement would be *enforceable*, merely that one existed." *Begonja*, 159 F. Supp. 3d at 409. If this showing is made, "the party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)).

### A. Whether a Valid Arbitration Agreement Exists

The Court must first determine "whether a valid agreement or obligation to arbitrate exists[.]" *LAIF X SPRL*, 390 F.3d at 198. Although Plaintiff opposes Defendant's motion, it does not contest the existence of an arbitration agreement in the retainer agreements. *See* Pl.'s Opp. at 5-9. Mr. Hoffberg's declaration also affirms the presence of an arbitration provision in each agreement. *See* Hoffberg Decl. ¶ 12. Nonetheless, Plaintiff raises several arguments as to why the Court should not compel arbitration. The Court addresses these in turn, but ultimately concludes that none are persuasive.

### 1. Compelling Arbitration Against a "Corporate Ghost"

Plaintiff's primary argument against arbitration is that it should not be compelled to arbitrate against "corporate ghosts." Pl.'s Opp. at 7. It insists that this action is non-arbitrable because the corporate entities – the signatories to the retainer agreements – are "defunct entities raided by the Defendant of their assets" and that it "did not negotiate for taking non-maintained (i.e., 'Inactive'), raided corporate shells to arbitration in any fee dispute."[4] *Id.* at 6, 8.

Plaintiff's argument is unpersuasive. "The Second Circuit has recognized that a signatory to an arbitration agreement is estopped 'from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 284 (S.D.N.Y. 2015) (citing *Choctaw Generation Ltd. P'ship v. American Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001)); *see also Ross v. Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008) ("[U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed . . . and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" (citations omitted)). This principle – known as the equitable estoppel doctrine – "prevent[s] a plaintiff from, in effect, trying to have [its] cake and eat it too; that is, from rely[ing] on the contract when it works to its advantage [by establishing the claim], and repudiat[ing] it when it works to its disadvantage [by requiring arbitration]." *Lapina*, 86 F. Supp. 3d at 284 (citation omitted).

---

[4] Defendant states that Plaintiff's allegation that "the various entities have been raided, and are empty shells" is "a complete fabrication." Def.'s Reply ¶¶ 2-3. Rather, he asserts that "[n]o action has been taken to divest any entity of its assets, including ownership of the respective IPs which is the subject of the legal representation." *Id.* ¶ 2.

Accordingly, "[a] non-signatory may compel arbitration on an estoppel theory, where (i) there is a close relationship between the parties and controversies involved and (ii) the signatory's claims against the non-signatory are 'intimately founded in and intertwined with the underlying' agreement containing the arbitration clause." *Birmingham Assocs., Ltd. v. Abbott Labs.*, 547 F.Supp.2d 295, 301 (S.D.N.Y. 2008), *aff'd*, 328 F. App'x 42 (2d Cir. 2009) (internal citations and quotations omitted). "Claims are intertwined 'where the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause.'" *Id.* (explaining that the estoppel argument requires a "fact-specific" inquiry and "careful review of the relationship among the parties, the contracts they signed . . . and the issues that had arisen among them"). "The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel." *Id.*

This doctrine is most commonly invoked in situations similar to the one presented here. That is, where "the non-signatory party asserting estoppel has had some sort of *corporate* relationship to a signatory party," including where "a non-signatory defendant owns or controls a signatory defendant." *Ross*, 547 F.3d at 144 (citing cases where the Second Circuit "has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities").

Thus, whether or not the corporate entities are defunct is immaterial to this analysis. Defendant – a non-signatory – seeks to compel Plaintiff to arbitrate against him pursuant to the provision he signed in the retainer agreements. Plaintiff's argument that it should not be forced to arbitrate against "corporate ghosts" therefore lacks merit because it would be arbitrating against Defendant. So long as Defendant demonstrates that there is (1) a "close relationship" between the parties and (2) Plaintiff's claims against Defendant "are 'intimately founded in and intertwined

with the underlying' agreement containing the arbitration clause," Defendant can compel Plaintiff to arbitrate as a non-signatory. *Birmingham Assocs.*, 547 F. Supp. 2d at 301. The Court concludes that these two requirements are met.

First, Defendant has the "close relationship" with the signatories to the agreement "that is required by the first prong of the estoppel test." *Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 504 (S.D.N.Y. 2009). Defendant is the manager of the corporate entities that Plaintiff contracted with. According to Plaintiff's own allegations, Defendant visited Plaintiff's office on behalf of the corporate entities and Plaintiff sent the monthly invoices for its legal services to Defendant, as well as the entities. *See* Compl. ¶ 9, 21; *see also* Def.'s Mot. Ex D (payments from corporate entities, signed by Defendant, to Plaintiff). Plaintiff even describes the corporate entities as "mere alter-egos of [Defendant]." *Id.* ¶ 12; *see also id.* ¶ 55 ("Defendant has conducted a corporate shell game . . . in order to avoid liability for work performed on his behalf[.]"). These allegations essentially serve as admissions by Plaintiff that Defendant has the requisite relationship with both Plaintiff and the corporate entities – the two signatories to the retainer agreements. As Defendant notes, "Plaintiff cannot allege that the entities are Defendant's alter-egos and avoid living up to the terms of the agreements it made with the alleged alter-egos. . . . If, as Plaintiff alleges (but is not admitted), Defendant stands in the shoes of the entities, then the relationship with Plaintiff is also . . . governed by the written retainer agreements." Def.'s Reply ¶ 21.

Courts in this district have found similar facts sufficient to constitute a "close relationship" for purposes of the estoppel doctrine. In *Bimota SPA v. Rousseau et al.*, for instance, the court concluded that defendants have "the kind of 'close relationship' that is required by the first prong of the estoppel test" with the parties to the underlying agreement because defendants were "the President and CEO and the controlling shareholder" of one signatory. 628 F. Supp. 2d at 504-505.

Similarly, there – as is also the case here – the plaintiff had alleged that a signatory was "the alter ego, or corporate shell for the Defendants." *Id.* 504-05. Noting that allegation, the court held that plaintiff's theory "in fact, affirmatively allege[d]" the requisite close relationship. *Id.* at 505. The same finding was made in *Lapina v. Men Women New York Model Management, Inc.*, where the non-signatory defendant seeking to compel arbitration was found to have the requisite "close relationship" to the signatories because the defendant regularly sent "checks, wire transfers and ledger statements" pursuant to the agreement to the plaintiff-signatory. 86 F. Supp. 3d at 284-85.

The second requirement of the estoppel doctrine is also met. Plaintiff's action against Defendant is premised on claims that "'are intimately founded in and intertwined with the underlying' agreement containing the arbitration clause." *Birmingham Assocs.*, 547 F. Supp. 2d at 301. Indeed, its claims are wholly premised on the work it did for the corporate entities pursuant to the retainer agreements. By alleging that Defendant has failed to pay for these legal services, Plaintiff alleges that Defendant breached the very agreement that includes the arbitration provision. By definition, therefore, Plaintiff's claims are closely "'intertwined with the underlying' agreement containing the arbitration clause." *Id.*

Again, these facts are similar to those presented in *Bimota* and *Lapina*. As the *Bimota* court explained, "[a]lthough Bimota SPA brought this action against Defendants, as individuals, the relationship between Bimota SPA and Defendants is founded in the terms of the Agreement." 628 F. Supp. 2d at 505; *see also Lapina*, 86 F. Supp. 3d at 284-85 (finding the claims "intertwined" because "[p]laintiffs have asserted that [the defendant] breached the [a]greement containing the very arbitration clause they seek to avoid"). As in those two cases, Plaintiff's claims presented here are directly linked to the underlying agreements containing the relevant arbitration provision.

Accordingly, because both prongs of the estoppel doctrine are satisfied, Plaintiff is estopped from "avoiding arbitration as required under the [written retainer agreements] while asserting claims [against Defendant] that are linked with the provisions of that same agreement." *Lapina*, 86 F. Supp. 3d at 285. It thus makes no difference whether the entities that Plaintiff signed retainer agreements with may now be described as "corporate ghosts."

### 2. Whether the Arbitration Provision was Breached

Next, Plaintiff argues that Defendant cannot enforce the arbitration provision because the agreements have been materially breached. Specifically, Plaintiff points to the arbitration provision's first clause, making mandatory arbitration "[s]ubject to precedence of any administrative rules or other legal obligations[.]" Def.'s Mot., Ex. B. Based on this language, Plaintiff argues that "Defendant has not met the basic prerequisites for requiring Ostrolenk to arbitrate the fee disputes with his entities" because "Defendant had the legal obligation to [Plaintiff] not to raid these corporate entities of their IP, including not to liquidate the entities, and to maintain the corporations in good standing with the respective states of incorporation." Pl.'s Opp. at 8.

This argument is equally ineffective. Plaintiff cites nothing – neither case law nor a provision in the retainer agreements – to support the notion that the phrase "other legal obligations" required Defendant to maintain the corporate entities in good standing to allow for arbitration of disputes. Simply alleging that Defendant has "manipulat[ed] the corporate entities, from allowing them to lapse into 'Inactive' status, to raiding them of their assets and liquidating them" – particularly when Defendant disputes the veracity of this allegation – is insufficient to explain what the phrase "other legal obligations" entailed. *Id.* at 9.

13

To the extent that Plaintiff is contending more broadly that Defendant breached the retainer agreement as a whole, rather than just the arbitration provision, that argument too would fail. "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc.*, 546 U.S. at 449; *see also Cole v. Pearson Educ., Inc.*, No. 10-CV-7523, 2011 WL 4483760, at *5 (S.D.N.Y. Sept. 28, 2011) ("[A]n arbitration clause is not rendered invalid by a challenge to the contract as a whole.").

### 3. Whether the Motion to Compel Arbitration is Timely

Finally, Plaintiff argues that granting Defendant's motion would undermine the purposes of arbitration because "Defendant has caused substantial delay, from his failure to timely respond to the Complaint or the Court's Order to Show Cause, to his sudden emergence on the eve of a hearing on damages for a Default Judgment." Pl.'s Opp. at 9.

"In determining whether a party through its litigation conduct has waived its right to arbitration of a dispute, we consider: '(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice.'" *LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 569 (2d Cir. 2015). "[W]aiver 'may be found only when prejudice to the other party is demonstrated.'" *Id* (citation omitted). Because of the "strong presumption in favor of arbitration," the Second Circuit has cautioned that waiver "is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-05 (2d Cir. 2002).

Plaintiff is correct to raise Defendant's delay in appearing in this matter. The Court nearly entered a default judgment as a result of his delay. This, however, must be weighed against other factors, including that Defendant is *pro se*. *See Walker v. Vaughn*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) ("Where, as here, the petitioner is *pro* se, 'leniency is generally accorded.'"

14

(citation omitted)). Plaintiff also cannot assert significant prejudice because it has not engaged in costly steps such as discovery or motion practice on the merits. *See Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) ("Sufficient prejudice to infer waiver has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense."). The fact, also, that Defendant's motion cited more grounds for dismissal beyond arbitration is immaterial. *See, e.g., Bimota SPA*, 628 F. Supp. 2d at 506 ("[T]he Court finds that Defendants have not waived their right to compel arbitration under the Agreement by seeking dismissal of some of the claims in the Amended Complaint."). As such, particularly in light of Defendant's *pro se* status and the strong presumption against waiver of arbitration, the Court rejects Plaintiff's timeliness argument.

### B. Whether Plaintiff Has Failed or Refused to Arbitrate

So long as there is a valid obligation to arbitrate, which the Court has found, the remaining question is "whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL*, 390 F.3d at 198. A "party has refused to arbitrate if it 'commences litigation or is ordered to arbitrate th[e] dispute . . . and fails to do so.'" *Id.* By initiating this action, therefore, Plaintiff has refused to arbitrate.

In sum, the Court concludes that Plaintiff has an obligation to bring this fee dispute against Defendant in arbitration. *See Lapina*, 86 F. Supp. 3d at 283-84 ("[A] party who 'signs a contract containing an arbitration clause and incorporating by reference the AAA rules . . . cannot [later] disown its agreed-to obligation to arbitrate all disputes[.]'"). Defendant's motion to compel arbitration is thus granted.

### III. Whether to Stay or Dismiss the Action Pending Arbitration

Lastly, upon granting Defendant's motion to compel, the Court must determine whether to stay proceedings pending arbitration or dismiss the action entirely. The Second Circuit recently explained that, although it "recognize[d] the impetus for a rule permitting dismissal . . . the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see also* 9 U.S.C. § 3 ("[T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]"). When "a stay is requested, the Court must grant the stay[,]" but "when a stay is not requested, the district court has discretion in determining whether to stay or dismiss the case pending arbitration." *Worthington v. JetSmarter, Inc.*, No. 18-CV-12113 (KPF), 2019 WL 4933635, at *8 (S.D.N.Y. Oct. 7, 2019).

Here, neither party has requested a stay. Although Defendant has requested that the matter be dismissed entirely, *see* Def.'s Reply ¶ 22, a stay will provide for a more "expeditious resolution of the dispute." *Worthington*, 2019 WL 4933635, at *8. The matter is, therefore, stayed pending the completion of arbitration.

## CONCLUSION

For the foregoing reasons, the Court construes Defendant's motion as one to compel arbitration and grants that motion. The matter is stayed pending the completion of arbitration. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 42 and to stay the case. The parties are ordered to update the Court on or before April 15, 2020, regarding the status of any arbitration.

Dated: January 2, 2020
New York, New York

Ronnie Abrams
United States District Judge